IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JASON GARCIA | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. _____ |
| | § | |
| GREEN TREE SERVICING LLC AND | § | |
| FEDERAL NATIONAL MORTGAGE | § | |
| ASSOCIATION A/K/A FANNIE MAE | § | |
| Defendant. | § | |

## NOTICE OF REMOVAL

Defendants Green Tree Servicing LLC ("Green Tree") and Federal National Mortgage Association ("Fannie Mae") hereby notify the court pursuant to 28 U.S.C. Section 1446(a) that they have this day removed this action from the 434th District Court of Fort Bend County, Texas, to this court. In support of their removal, Defendants submit this notice. Removal is based on the grounds that diversity jurisdiction exists over this action because there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00. Defendants respectfully show as follows:

### I. BACKGROUND

1.     On or about December 22, 2011, Plaintiff filed Plaintiff's Original Petition, Petition for Declaratory Relief, Application for Injunctive Relief, and Request for Disclosures (hereinafter "Petition"), bearing Cause No. 11-DCV-195240, in the 434th Judicial District Court of Fort Bend County, Texas (the "State Court Action"). Attached as Exhibit A is a true and correct copy of the Docket Sheet from the State Court Action. Attached as Exhibit B are true and correct copies of all

**NOTICE OF REMOVAL**
W:\1750\2341\NOT-REMOV-FedCt.wpd     Page 1

process, pleadings, and orders served in the State Court Action in accordance with 28 U.S.C. Section 1446(a).

2.      Plaintiff Jason Garcia was a borrower on a mortgage loan in the original principal amount of $129,000. Plaintiff defaulted on his obligations under the Note and the Deed of Trust and failed to cure his default.  On September 6, 2011, a foreclosure sale of the Property was conducted and Defendant Fannie Mae purchased the Property in question at the foreclosure sale.

3.      Plaintiff then filed an action in the District Court of Fort Bend County, Texas.  The allegations in the Petition relate to the Deed of Trust and foreclosure on Plaintiff's home located at 7134 Sherman Ridge Lane, Houston, Texas 77083 (the "Property"). (*See Pl.'s Pet.* at ¶ 8.)

4.      Plaintiff asserts claims for declaratory judgment that any foreclosure sale was ineffective, is null and void, or alternatively voidable and rescinded, and the Property is lawfully owned by Plaintiff. (*Id.* at ¶ 13.) Plaintiff also requests a declaration that the doctrines of estoppel and laches bar Defendants from taking action against the Property adverse to Garcia. (*Id.* at ¶ 14.) Additionally, Plaintiff alleges that Green Tree breached its contract with Plaintiff, Green Tree committed negligence, Green Tree committed wrongful foreclosure, and Green Tree committed slander of title. Plaintiff further seeks actual damages, special damages, reasonable attorneys' fees, and temporary restraining order and injunction, enjoining Defendants from selling the Property or evicting Plaintiff.

5.      Defendants were provided notice of the suit on December 22, 2011.  Defendant Fannie Mae was personally served January 12, 2012.  To date, Defendant Green Tree has not yet been served.

**NOTICE OF REMOVAL**
W:\1750\2341\NOT-REMOV-FedCt.wpd    Page 2

A.    DIVERSITY JURISDICTION

6.    Federal diversity jurisdiction exists over this removed action pursuant to 28 U.S.C.

§1332 because all parties are diverse and the amount in controversy exceeds $75,000.00.

a.    There is complete diversity among all parties.

b.    There is diversity of citizenship among all relevant parties.  Diversity existed at the time the Original Petition was filed in state court and it currently exists at the time of removal.

c.    Plaintiff is a citizen of Texas.  Specifically, Plaintiff owns the home located in Fort Bend County, Texas which is the subject of this lawsuit.  Plaintiff is therefore a citizen of the State of Texas for diversity purposes. *American Realty Trust, Inc. v. Misse Partners, LLC*, Civil Action No. 3:00-CV-1801-G, 2002 W.L. 1359702 at...3 (N.D.Tex. June 19, 2002) (Citizenship or Domicile for diversity purposes is determined by two elements: (1) Physical presence within a state and  (2) intent to make a home there indefinitely).

7.    Green Tree Servicing, LLC is a corporation which is organized under the laws of the

State of Delaware.  Green Tree's home office is located in St. Paul, Minnesota.  A corporation is a

citizen of its state of incorporation and the state where its principal place of business is located.  28

U.S.C. §1332(c).  For diversity purposes, the citizenship of a limited liability company is determined

by the citizenship of its members. *Id.*  Green Tree Servicing, LLC is a citizen of Delaware.

1.    **Citizenship of Green Tree's Members.**

8.    The sole member of Green Tree Servicing, LLC, a Delaware limited liability company

(principal office in Minnesota) is Green Tree Licensing, LLC, a Delaware limited liability company

(principal office in Minnesota).  Accordingly, Green Tree Licensing, LLC is a citizen of Delaware.

9.    The sole member of Green Tree Licensing, LLC, a Delaware limited liability

company (principal office in Minnesota) is Green Tree MH LLC, a Delaware limited liability

**NOTICE OF REMOVAL**

company (principal office in Minnesota). Accordingly, Green Tree MH LLC is a citizen of Delaware.

10.    The sole member of Green Tree MH LLC, a Delaware limited liability company (principal office in Minnesota) is Green Tree HE/HI LLC, a Delaware limited liability company (principal office in Minnesota). Accordingly, Green Tree HE/HI LLC is a citizen of Delaware.

11.    The sole member of Green Tree HE/HI LLC, a Delaware limited liability company (principal office in Minnesota) is Green Tree CL LLC, a Delaware limited liability company (principal office in Minnesota). Accordingly, Green Tree CL LLC is a citizen of Delaware.

12.    The sole member of Green Tree CL LLC, a Delaware limited liability company (principal office in Minnesota) is Green Tree Holding LLC, a Delaware limited liability company (principal office in Minnesota). Accordingly, Green Tree Holding LLC is a citizen of Delaware.

13.    The sole member of Green Tree Holding LLC, a Delaware limited liability company (principal office in Minnesota) is Green Tree Investment Holdings II LLC, a Delaware limited liability company (principal office in Minnesota). Accordingly, Green Tree Investment Holdings II LLC is a citizen of Delaware.

14.    The sole member of Green Tree Investment Holdings II LLC, a Delaware limited liability company (principal office in Minnesota) is Green Tree Credit Solutions LLC, a Delaware limited liability company (principal office in Minnesota). Accordingly, Green Tree Credit Solutions LLC is a citizen of Delaware.

15.    The sole member of Green Tree Credit Solutions LLC, a Delaware limited liability company (principal office in Minnesota) is GTCS Holdings LLC, a Delaware limited liability

company (principal office in Minnesota).   Accordingly, GTCS Holdings LLC is a citizen of Delaware.

16.     The sole member of GTCS Holdings LLC, a Delaware limited liability company (principal office in Minnesota) is Walter Investment Holding Company LLC, a Delaware limited liability company (principal office in Florida).  Accordingly, Walter Investment Holding Company LLC is a citizen of Delaware.

17.     The sole member of Walter Investment Holding Company, LLC, a Delaware limited liability company (principal office in Florida) is Walter Investment Management Corp., a Maryland corporation (principal office in Florida).  Accordingly, Walter Investment Management Corp., LLC is a citizen of Maryland.

### 2.     Fannie Mae

18.     Fannie Mae is a government-sponsored enterprise existing under the laws of the United States of America with its principal place of business in Washington, District of Columbia ("D.C.").  Fannie Mae is deemed to be a D.C. corporation.  12 U.S.C. § 1717(a)(2)(B).  Therefore Fannie Mae is a citizen of D.C.

19.     There is diversity of citizenship between Plaintiff and all members of Defendant corporation, Green Tree Servicing, LLC and Defendant Corporation Fannie Mae.  Because Plaintiff is a citizen of the State of Texas, Defendant Green Tree Servicing, LLC and its members are citizens of the State of Delaware and the State of Maryland, and Defendant Fannie Mae is a citizen of D.C., there is complete diversity between Plaintiff and Defendant for purposes of 28 U.S.C. §1332.

B.   THE AMOUNT OF CONTROVERSY EXCEEDS $75,000.00

    1.    **Plaintiff's request for injunctive and declaratory relief exceeds $75,000.00.**

20.    It is a well established principal that "[W]hen the right to property is questioned, the value of the property controls the amount in controversy." *Polinard v. Home Comings Financial Network, Inc.* Civil Action No. SA-06CKA-1130FB, 207WL1745314, at...2 (W.D. Tex. June 14, 2007). *See also Baller v. Prof'l. Ins. Corp.*, 296 F.2d 545, 547 - 548 (5th Cir. 1961) (stating that "courts look to the value of the property involved rather than the damages that might be suffered, to determine the jurisdictional amount in suits for injunctions"). *Groves v. Rogers*, 547 F.2d 898, 900 (5th Cir. 1997)(citing *Peterson v. Suerco*, 93 F.2d 878, 882 (4th Cir. 1938) finding that "it is the value of the property rather than the claim of the contending parties which fixes the amount in controversy for purposes of jurisdiction").

21.    Plaintiff is seeking, *inter alia*, to enjoin Defendants, from selling the Property in question and a declaration that the foreclosure sale was ineffective, null and void, or alternatively, voidable and rescinded, and the Property is lawfully owned by Garcia. (*See Pl.'s Pet.* at ¶¶ 13, 27-29.) Attached as Exhibit C-1 and incorporated for all purposes hereto is a true and correct copy of a Fort Bend County Appraisal District Tax Appraisal for the Property which reflects that the Property in question has an appraisal of value of $101,700. Pursuant to the precedent cited above, Plaintiff placed in issue an amount in controversy in excess of the $75,000.00 minimum requirement.

    2.    **Plaintiff's request for actual damages exceeds $75,000.00.**

22.    It is well established 5th Circuit precedent that when a Plaintiff's complaint does not allege a specific amount of damages, and removal is based on diversity of citizenship, the removing

Defendant need simply prove the amount in controversy exceeds $75,000.00 by a preponderance of the evidence. *See Manguno v. Prudential Property & Cas. Ins. Co.*, 276 F.3d 720, 723-724 (5th Cir. 2002).

23.     Defendant satisfies this burden in one of two ways. First, jurisdiction is proper if "it is facially apparent" from the complaint that "claims are likely to be above [$75,000.00]." *Garcia v. Koch Oil Co. of Texas, Inc.,* 351 F.3d 636, 639 (5th Cir. 2003).  When a complaint does not expressly demand an amount in excess of $75,000.00, the Defendant "may support federal jurisdiction by setting forth the facts - [either] in the removal petition [or] by affidavit – that support a finding of the requisite amount. *Id.; See also Lucett v. Delta Airlines, Inc.*, 171 F.3d, 295, 298 (5th Cir. 1999).

24.     First, as indicated above, Plaintiff seeks to enjoin Defendants from selling the Property in question and seeks to have the foreclosure sale declared null and void.  The subject property is worth in excess of $75,000 and for this reason alone, the minimum amount in controversy is met.  Furthermore, as of July 2011 approximately $127,557.38 was owed on the subject mortgage loan.  In addition, Plaintiff seeks an award of actual and special damages in unspecified amounts.

**3.     Attorneys' fees are included in determining the amount in controversy.**

25.     Plaintiff requests attorneys' fees, which are properly considered in determining the amount in controversy. *St. Paul Reinsurance Co., Ltd. V. Greenberg*, 134 F.3d 864 (5th Cir. 2002) (though considering attorney's fees in a putative class action, to like effect).  Similar cases have awarded attorneys' fees exceeding the jurisdictional minimum. *See, e.g., Moreno v. Kleberg First National Bank of Kingsville*, 105th District of Kleberg County, Texas (jury verdict included $570,000

in attorneys' fees against bank for fraud claims and threats of foreclosure relating to plaintiffs' home mortgage loan). For this reason alone, it is facially apparent from the Petition that Plaintiff's claims exceed the jurisdictional threshold.

26.     For the reasons stated above, there can be no dispute that Plaintiff seeks in excess of the minimum amount in controversy under any standard of evidence, let alone the preponderance of the evidence standard that applies here. Plaintiff's injunctive claim exceeds $75,000 and his claim for actual damages, special damages, and attorneys' fees exceeds $75,000. Taken together there can be no viable dispute that the amount in controversy is met.

C.     VENUE

27.     Venue for removal is proper in this District and Division under 28 U.S.C. §1441(a) because this District and Division embrace the 434th District Court of Fort Bend County, Texas, the forum in which the removed action was pending.

D.     NOTICE

28.     Concurrently with the filing of this notice, Defendants will file a copy of this Notice of Removal with the clerk of the 434th Judicial District Court of Fort Bend County, Texas.

29.     The contents of Exhibit B constitute the entire file of Cause No. 11-DCV-195240 in the 434th Judicial District Court of Fort Bend County, Texas.

**NOTICE OF REMOVAL**

Respectfully submitted,

HIGIER ALLEN & LAUTIN, P.C.

By: _____
       Richard A. McKinney
       State Bar No. 13723430

5057 Keller Springs Road, Suite 600
Addison, Texas  75001-6020
Telephone: (972) 716-1888
Telecopy:   (972) 716-1899
rmckinney@higierallen.com
ATTORNEYS FOR DEFENDANT

**NOTICE OF REMOVAL**

## LIST OF ALL KNOWN COUNSEL OF RECORD

For Plaintiff Jason Garcia

Robert C. Vilt
Vilt and Associates, P.C.
5177 Richmond Ave, Suite 1230
Houston, Texas 77056
(713) 840-7570
(713) 877-1827 (Fax)

For Defendant Green Tree Servicing, LLC and Federal National Mortgage Association

Richard A. McKinney
HIGIER ALLEN & LAUTIN, P.C.
5057 Keller Springs Rd., Suite 600
Addison, Texas 75001
(972) 716-1888
(972) 716-1889 (Fax)

**NOTICE OF REMOVAL**

## INDEX OF DOCUMENTS ATTACHED

Exhibit A   Copy of the Docket Sheet for Cause No. 11-DCV-195240 in the 434th Judicial District Court of Fort Bend County, Texas;

Exhibit B   Pleadings in Cause No. 11-DCV-195240 in the 434th Judicial District Court of For Bend County, Texas;

B-1   Plaintiffs' Original Petition, Petition for Declaratory Relief, Application for Injunctive Relief, And Request for Disclosures, filed December 22, 2011;

B-2   Affidavit of Jason Garcia

B-3   Temporary Restraining Order and Order Setting Hearing for Temporary Injunction, signed December 22, 2011;

B-4   Civil Case Information Sheet, December 22, 2011;

B-5   Request for Process, December 22, 2011;

B-6   Citation to Federal National Mortgage Association, December 22, 2011

B-7   Issuance of TRO to Green Tree Servicing LLC, December 22, 2011;

B-8   Issuance of TRO to Federal National Mortgage Association, December 22, 2011

B-9   Order Granting Motion to Extend Temporary Restraining Order, January 5, 2012;

B-10   Show Cause Order, January 5, 2012;

B-11   Original Answer of Green Tree Servicing, LLC, January 16, 2012;

Exhibit C   Declaration of Maris E. Matocha

C-1.   Print-out from the Fort Bend County, Texas Central Appraisal District web-site on January 16, 2012.

## NOTICE OF REMOVAL
W:\1750\2341\NOT-REMOV-FedCt.wpd   Page 11

## CERTIFICATE OF SERVICE

I hereby certify that on the _18_ day of January, 2012, a true and correct copy of the foregoing was sent via U.S. Certified Mail, Return Receipt Requested to:

Robert C. Vilt
Vilt and Associates, P.C.
5177 Richmond Ave, Suite 1230
Houston, Texas 77056

_____
Richard A. McKinney

**NOTICE OF REMOVAL**
W:\1750\2341\NOT-REMOV-FedCt.wpd    Page 12

11-DCV-195240
DCBH
Docket Sheet
1506695

**DOCKET**

CAUSE NO.  11-DCV-195240

| COURT NO. | STYLE OF CASE | ATTORNEYS | TYPE OF ACTION | DATE OF FILING | | |
|---|---|---|---|---|---|---|

434TH JUDICIAL DISTRICT COURT

STENOGRAPHER USED?

YES   NO

STYLE OF CASE

JASON GARCIA V. GREEN TREE SERVICING, LLC AND FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE

ATTORNEYS

ROBERT C VILT

VILT AND ASSOCIATES PC
5177 RICHMOND SUITE 1230
HOUSTON TX 77056

713-840-7570

TYPE OF ACTION

Contract -
Consumer/Commerci
al/Debt

DATE OF FILING

| MONTH | DAY | YEAR |
|---|---|---|
| 12/22/2011 | | |

JURY FEE:

PAID BY:

| DATE OF ORDERS | | | ORDERS OF COURT |
|---|---|---|---|
| MONTH | DAY | YEAR | |
| 12 | 22 | 11 | TRO Signed - JM |
| 01 | 05 | 12 | TRO Expires |

EXHIBIT

A

CAUSE NO. 11-DCV-195240
JASON GARCIA V. GREEN TREE SERVICING, LLC AND FEDERAL NATIONAL MORTGAGE ASSOCIATION A/K/A FANNIE MAE

| DATE OF ORDERS | | |
|---|---|---|
| MONTH | DAY | YEAR |
| | | |
| | | |
| | | |
| | | |

11-DCV-195240
ORPE
Original Petition
1550805

CAUSE NO. _____

11-DCV--195240

| | | |
|---|---|---|
| JASON GARCIA | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | OF FORT BEND COUNTY, TEXAS |
| | § | |
| GREEN TREE SERVICING, LLC AND | § | |
| FEDERAL NATIONAL MORTGAGE | § | **434** JUDICIAL DISTRICT |
| ASSOCIATION A/K/A FANNIE MAE | § | |

## PLAINTIFF'S ORIGINAL PETITION, PETITION FOR DECLARATORY RELIEF, APPLICATION FOR INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW JASON GARCIA, Plaintiff herein, filing this his Original Petition, Petition for Declaratory Relief, Application for Injunctive Relief, and Request for Disclosures complaining of Green Tree Servicing, LLC and Federal National Mortgage Association a/k/a Fannie Mae, Defendants herein, and for causes of action would respectfully show the Court as follows:

### DISCOVERY

1.    Plaintiff intends to conduct discovery under Texas Rules of Civil Procedure 190.3 (Level 2).

### PARTIES

2.    Jason Garcia  is an individual who resides in Fort Bend County, Texas and may be served with process on the undersigned legal counsel.

3.    Green Tree Servicing, LLC is a limited liability company formed under the laws of the State of Delaware which conducts business in Fort Bend County, Texas, among other places, and may be served with process on its registered agent as follows:



EXHIBIT
B-1

Green Tree Servicing, LLC
c/o CT Corporation System
350 N. St. Paul Street, Suite 2900
Dallas, Texas 75201

4.     Federal National Mortgage Association a/k/a Fannie Mae is a corporation formed under the laws of the District of Columbia which conducts business in Fort Bend County, Texas, among other places, does not have a registered agent on file with the Office of the Comptroller of the State of Texas, and may be served with process as follows:

Federal National Mortgage Association a/k/a Fannie Mae
14221 Dallas Parkway, Suite 100
Dallas, Texas 75254

## JURISDICTION AND VENUE

5.     The Court has jurisdiction over Green Tree Servicing, LLC because this Defendant is a limited liability company formed under the laws of the State of Delaware which conducts business in Fort Bend County, Texas.

6.     The Court has jurisdiction of the over Federal National Mortgage Association a/k/a Fannie Mae because this Defendant is a corporation formed under the laws of the District of Columbia which conducts business in Fort Bend County, Texas.

7.     The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court. Venue is mandatory in Fort Bend County, Texas because the subject matter of this lawsuit involves recovery of real property and removal of encumbrance on real property which is located in Fort Bend County, Texas. Further, all or a substantial part of the events or omissions giving rise to the Plaintiff's causes of action occurred in Harris County, Texas thus venue is proper under §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

## RELEVANT FACTS

8.      On or about January 25, 2008, the Plaintiff purchased the real property and the improvements thereon located at 7134 Sherman Ridge Lane, Houston, Texas 77083 which is also known as Lot 9, in Block 1, of Great Oaks South, Section One (1), Amending Plat No. 1, an addition in Fort Bend County, Texas, according to the Map and Plat thereof recorded in Slide No. 2225/B of the Plat Records of Fort Bend County, Texas (the "Property"). The Plaintiff executed a Deed of Trust and a Promissory Note with National City Mortgage, which at some point in time was transferred to Green Tree Servicing, LLC ("Green Tree"), for the principal sum of One Hundred Twenty-Nine Thousand and no/100 Dollars ($129,000.00). A true and correct copy of the related Deed of Trust and Promissory Note are attached hereto as Exhibit "1" and "2" incorporated herein for all purposes.

9.      The Plaintiff began to have financial difficulties over time and, as a direct result, became delinquent in his mortgage payments to Green Tree. The Plaintiff received a Notice of Acceleration Enclosing Notice of Substitute Trustee's Sale dated August 15, 2011 from Green Tree's legal counsel notifying him that his mortgage was currently in default. A true and correct copy of this correspondence is attached hereto as Exhibit "3" and incorporated herein for all purposes.

10.     In response thereto, the Plaintiff contacted Green Tree and attempted to make a one-time payment in order to bring his loan payment current. The Plaintiff was informed by representatives from Green Tree that, due to his property having been set for sale at foreclosure, they would not accept his payment.

11.     Without providing a foreclosure notice to the Plaintiff, and in defiance of his legal rights, Green Tree conducted a foreclosure sale of his Property on September 06, 2011 and sold

his Property to Defendant  Federal National Mortgage Association a/k/a Fannie Mae ("Fannie

Mae").

## FIRST CAUSE OF ACTION:
## DECLARATORY JUDGMENT

12.     To the extent not inconsistent herewith,  Plaintiff Jason Garcia  ("Garcia")

incorporates by reference the allegations made in paragraphs 1 through 11 as if set forth fully

herein.

13.     Garcia requests a declaration that the alleged foreclosure sale of the Property to

Fannie Mae that purportedly occurred on September 06, 2011 was ineffective, null and void, or

alternatively, voidable and rescinded, and the Property is lawfully owned by Garcia.

14.     Garcia requests a declaration that the doctrines of estoppel and laches further

preclude Green Tree and Fannie Mae from taking action against the Property adverse to Garcia.

## SECOND CAUSE OF ACTION:
## BREACH OF CONTRACT

15.     To the extent not inconsistent herewith, Garcia incorporates by reference the

allegations made in paragraphs 1 through 14 as if set forth fully herein.

16.     The actions committed by Green Tree Servicing, LLC constitutes a breach of

contract because:

    A.     There exists a valid, enforceable contract between  Garcia and Green Tree,

           Servicing, LLC;

    B.     Garcia has standing to sue for breach of contract;

    C.     Garcia performed, tendered performance, or was excused from performing

           his contractual obligations;

D.   Green Tree Servicing, LLC  breached the contract; and

E.   The breach of contract Green Tree Servicing, LLC by  caused Garcia's

injury.

### THIRD CAUSE OF ACTION:
### NEGLIGENCE

17.   To the extent not inconsistent herewith,  Garcia incorporates by reference the

allegations made in paragraphs 1 through 16 as if set forth fully herein.

18.   The actions committed by Green Tree Servicing, LLC constitutes negligence

because:

A.   Green Tree Servicing, LLC owed a duty to Garcia;

B.    Green Tree Servicing, LLC breached the duty; and

C.   The breach  proximately caused Garcia's injury.

### FOURTH CAUSE OF ACTION:
### WRONGFUL FORECLOSURE

19.   To the extent not inconsistent herewith, Hall incorporates by reference the

allegations made in paragraphs 1 through 18 as if set forth fully herein.

20.   The actions committed by  Green Tree Servicing, LLC constitute wrongful

foreclosure because:

A.   A defect exists in the foreclosure sale proceedings conducted by Green

Tree Servicing, LLC.

B.   A grossly inadequate selling price was paid for the Property by Federal

National Mortgage Association a/k/a Fannie Mae at the foreclosure sale

proceedings; and

C.   A causal connection exists between the defect in the foreclosure sale

proceedings and the grossly inadequate selling price paid by Federal

National Mortgage Association a/k/a Fannie Mae at the foreclosure

proceedings.

## FIFTH CAUSE OF ACTION:
## SLANDER OF TITLE

21.     To the extent not inconsistent herewith, Garcia incorporates by reference the

allegations made in paragraphs 1 through 20 as if set forth fully herein.

22.     The actions committed by Green Tree Servicing, LLC constitute slander of

title because:

      A.      Garcia  possessed an estate or interest in the Property;

      B.      Green Tree Servicing, LLC  uttered and published a disparaging statement

              about the title to the Property;

      C.      The statement was false;

      D.      The statement was published with legal malice; and

      E.      The publication caused special damages.

## DAMAGES:
## ACTUAL DAMAGES

23.     The Plaintiff is entitled to recover his  actual damages from Defendant Green Tree

Servicing, LLC for which the Plaintiff pleads in an amount which does not exceed the

jurisdictional limits of this Court.

## SPECIAL DAMAGES

24.     The Plaintiff is entitled to recover his special damages from Defendant  Green

Tree Servicing, LLC for which the Plaintiff pleads in an amount which does not exceed the

jurisdictional limits of this Court.

## ATTORNEYS' FEES

25.     The Plaintiff was forced to employ the undersigned attorneys to represent him and have agreed to pay them reasonable attorneys' fees for their services. The Plaintiff is entitled recover his reasonable attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code.

## CONDITIONS PRECEDENT

26.     All conditions precedent to the Plaintiff's right to bring these causes of action have been performed, have occurred, or have been waived.

## REQUEST FOR DISCLOSURES

26.     Green Tree Servicing, LLC and Federal National Mortgage Association a/k/a Fannie Mae are hereby requested to disclose to Jason Garcia within 50 days of service of this request, the information and material described in Rule 194 of the Texas Rules of Civil procedure.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

27.     To the extent not inconsistent herewith, the Plaintiff incorporates by reference the allegations made in paragraph 1 through paragraph 25 as if set forth fully herein.

28.     Unless the Defendants are enjoined, the Plaintiff will suffer probable harm which is imminent and irreparable. More specifically, if not enjoined, the Defendants may sell the Property to a disinterested third party at any time during the pendency of this matter thus depriving the Plaintiff of ownership of the Property and potentially causing the Plaintiff to be dispossessed of their Property. Further, the Defendants may take legal action to evict the Plaintiff from the Property during the pendency of this matter which likewise may cause the Plaintiff's to

be dispossessed of the Property. The Plaintiff has no adequate remedy at law because the subject matter is real property, and any legal remedy of which Plaintiff may avail will not give her as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

29.     Therefore, the Plaintiff requests that this Court issue a Temporary Restraining Order and, thereafter, a Temporary Injunction, to restrain the Defendants from selling the real property which is the subject matter of this lawsuit and is commonly known as 7134 Sherman Ridge Lane, Houston, Texas 77083  as well as from taking any legal action to evict the Plaintiff from the foreclosure or enforce a writ of possession regarding the aforementioned property.

30.     The Plaintiff further requests that, upon trial on the merits, the Defendants be permanently enjoined from the same acts listed in Paragraph 29 above.

31.     The Plaintiff is likely to prevail on the merits of the lawsuit because, as described above, the Defendants have wrongfully conducted a foreclosure sale of the Property in violation of the agreements between the parties.

32.     The granting of the relief requested is not inconsistent with public policy considerations.

### BOND

33.     The Plaintiff is willing to post a reasonable temporary restraining order bond and request that the Court set such bond.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Plaintiff respectfully requests that:

A.   The Defendants be cited to appear and answer herein;

B.   The Court conduct a hearing on the Plaintiff's Application for Injunctive Relief;

C.   A temporary restraining order be issued restraining the Defendants, their agents, employees, officers, directors, shareholders, and legal counsel, and those acting in concert or participation with them who receive actual notice of the Order, by personal service or otherwise, from selling the real property which is the subject matter of this lawsuit and is commonly known as 7134 Sherman Ridge Lane, Houston, Texas 77083 as well as from taking any legal action to evict the Plaintiff from the aforementioned property;

D.   A Permanent Injunction be entered restraining the Defendants from the same acts listed in Paragraph C above; and

E.   Upon final hearing or trial hereof, the Court order a judgment in favor of Jason Garcia against Green Tree Servicing, LLC for his actual damages, special damages, reasonable attorneys' fees, and all costs of court, and such other and further relief, both general and special, at law or in equity, to which the Plaintiff may be entitled.

Respectfully submitted,

VILT AND ASSOCIATES, P.C.

By: _____
ROBERT C. VILT
Texas Bar Number 00788586
5177 Richmond Avenue, Suite 1230
Houston, Texas 77056
Telephone:    713.840.7570
Facsimile:    713.877.1827

ATTORNEYS FOR PLAINTIFF
JASON GARCIA

FILED
2011 DEC 22 AM 10: 17
CLERK DISTRICT COURT
FORT BEND CO., TX



EXHIBIT

1

Return To:

**National City Bank**
**P.O. Box 8800**
**Dayton, OH 45401-8800**

Prepared By:

**CALVIN C. MANN JR.**
**4900 WOODWAY DR. STE 650**
**HOUSTON, TX 77056**

─────────────[Space Above This Line For Recording Data]─────────────

0005930557

# DEED OF TRUST
## NOTICE OF CONFIDENTIALITY RIGHTS:
**IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **January 25, 2008** together with all Riders to this document.

(B) "Borrower" is

**JASON GARCIA A Single Man**

Borrower is the grantor under this Security Instrument.

(C) "Lender" is **National City Mortgage a division of National City Bank**

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3044 1/01

1780122 (0704)

Page 1 of 16          Initials

Wolters Kluwer Financial Services



Lender is a **National Banking Association**
organized and existing under the laws of **United States**
Lender's address is **3232 NEWMARK DRIVE,**
**MIAMISBURG, OH 45342**

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is **CALVIN C. MANN JR.**

. Trustee's address is

**4900 WOODWAY DR. STE 650**
**HOUSTON, TX 77056**

(E) "Note" means the promissory note signed by Borrower and dated **January 25, 2008**
The Note states that Borrower owes Lender
**ONE HUNDRED TWENTY NINE THOUSAND & 00/100** Dollars
(U.S. $ **129,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **February 1, 2038** .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Occup Rider |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.



(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                                     of           Fort Bend                          :
[Type of Recording Jurisdiction]                      [Name of Recording Jurisdiction]

LOT 9, IN BLOCK 1, OF GREAT OAKS SOUTH, SECTION ONE (1),
AMENDING PLAT NO. 1, AN ADDITION IN FORT BEND COUNTY, TEXAS,
ACCORDING TO THE MAP OR PLAT THEREOF , RECORDED IN SLIDE NO.
2225/B OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS.

Parcel ID Number:                                        which currently has the address of
                     7134 SHERMAN RIDGE LN,                                                [Street]
                     HOUSTON
                                                    [City], Texas      77083            [Zip Code]
("Property Address"):

      TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

      BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

1780122 (0704)                          Page 3 of 78    Initials         Form 3044  1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage

Initials

Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be    in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith



by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies, shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law   requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If

1780122 (0704)                           Page 8 of 18                   Form 3044   1/01

the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing

the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that

derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such  Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

1780122 (0704)                                Page 9 of 16          Initials           Form 3044  1/01